UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODNEY MORENO,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>LLOYD J. AUSTIN, III, Secretary, U.S. Department of Defense,<br><br>　　　　Defendant. | No. 2:22–cv–1719–KJM–KJN PS<br><br>FINDINGS AND RECOMMENDATIONS TO DISMISS WITHOUT LEAVE TO AMEND<br><br>(ECF No. 5.) |

Plaintiff, who proceeds without counsel in this action, asserts multiple employment discrimination claims in connection with his employment at Defense Logistics Agency. (ECF No. 1.) Defendant Austin, the current U.S. Defense Secretary, now moves for dismissal of all claims, arguing: (A) the court does not have subject matter jurisdiction to hear any procedural due process claims tied to plaintiff's suspension; and (B) the discrimination, retaliation, and hostile work environment claims are insufficiently pleaded.[1] (ECF Nos. 5, 7.) Plaintiff opposes, arguing his claims are sufficiently pleaded and legally sufficient. (ECF No. 6.)

For the reasons that follow, plaintiff's claims in the complaint should be dismissed and leave to amend should be denied as futile.

---

[1] Because plaintiff proceeds without counsel, this motion is referred to the undersigned for the entry of findings and recommendations. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; E.D. Cal. L.R. 302(c)(21); L.R. 304.

1

**Background**[2]

Plaintiff is a sixty year old Hispanic male with a permanent medical sciatic nerve condition who, during the relevant period, was employed as a distribution process worker by Defense Logistics Agency, housed within the U.S. Department of Defense. This dispute concerns plaintiff's 14-day suspension because of an incident that occurred on December 7, 2017, between plaintiff and a co-worker, Cynthia Newton. According to Newton, as she approached and opened a door to the break room, plaintiff made eye contact with her then bumped into her as if deliberate. Newton stated she said "Wow, excuse you" but plaintiff offered no reply. Plaintiff disputed this version, asserting Ms. Newton had been making "smart" remarks for days prior, including in the doorway that day. (ECF No. 1 at 20.) The police were called and interviews were conducted.

On February 22, 2018, the Investigating Officer ("IO") issued findings regarding the incident, recommending plaintiff be suspended for 14 days for "Conduct Unbecoming a Federal Employee." The IO based the recommendation on five sources: (1) a December 7 statement given by plaintiff's supervisor to the police officer; (2) Ms. Newton's statement; (3) plaintiff's statement; (4) interview statements from co-worker Thomas Johnson (on whom plaintiff relied in support but who reported no memory of the event) and the branch chief Melvin Sparks (who reiterated Ms. Newton's statement and who contended plaintiff had a history with Ms. Newton and had the potential to escalate conflicts to an aggressive or threatening level); and (5) a formal investigation by the IO (including interviews with plaintiff's co-workers who indicated plaintiff was "difficult to work with" and tended "to dwell on past issues" that affected his ability to work with others). The report noted that plaintiff stated there were two other witnesses to the event who had not been interviewed, but because plaintiff could not remember their names, they were not interviewed. The IO's report stated it attached the documentation used to support the

---

[2] The background facts are taken from the complaint and the judicially-noticeable Investigation Report and related documents submitted to the EEOC and attached to the complaint. (ECF No. 1 at 20-36; ECF No. 5-3.) See Fed. R. Evid. 201(b)-(d); Anderson v. Holder, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012) ("[A court] may take judicial notice of records and reports of administrative bodies."). Well pleaded facts from these sources are viewed in a light most favorable to plaintiff. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Papasan v. Allain, 478 U.S. 265, 283 (1986).

recommendations. (ECF No. 1 at 20-21 and 23-24.)

A week later, plaintiff requested copies of the documents used to support the IO's findings, asserting he had not received them. (ECF No. 1 at 8.) The IO informed plaintiff that requests for additional documentation would need to be processed by HR. (Id. at 8, 28.) Thereafter, plaintiff replied to the IO's report in writing and orally, disputing the findings, arguing other evidence was not collected or reviewed, asserting again that the supporting documents were not provided to him, and arguing he was being treated unfairly because of his past EEO complaints against Mel Sparks. (Id. at 22.) On March 29, the deputy chief adopted the IO's findings and recommendations after considering plaintiff's reply, finding the charges supported by the facts of the case and suspending plaintiff for 14 days. (Id. at 25-27.)

Plaintiff filed a complaint with the EEO, asserting his employer's decisions to suspend him and reassign him with a "no contact [with Ms. Newton]" order, were motivated by his race/national origin, color, sex, disability, age, and in retaliation for earlier protected activity. (Id. at 29-30.) The EEO found for the Agency, plaintiff appealed, and the Office of Federal Operations ("OFO") affirmed. (Id. at 11-19, 29-36.)

**Procedural Posture and Parties' Arguments**

On September 29, 2022, plaintiff filed a complaint in this court against the current Secretary of Defense,[3] asserting claims for disparate treatment due to his race, color, gender, national origin, age, and disability, claims for retaliation and hostile work environment, and a claim for procedural deficiencies related to his suspension as per 5 U.S.C. § 7503 and 5 C.F.R. § 752.203. Defendant moved to dismiss, arguing: (A) the court lacks subject matter jurisdiction to hear plaintiff's procedural-defects claim regarding the IO's alleged failure to turn over supporting documentation, as the Civil Service Reform Act ("CSRA") does not grant a district court the power to hear such claims; and (B) plaintiff's disparate treatment, retaliation, and hostile work environment claims are insufficiently pleaded. (ECF No. 5.) Plaintiff opposed dismissal and defendant replied. (ECF No. 6, 7.) The court held a hearing on January 17, 2023. (ECF No.

---

[3] See 42 U.S.C. § 2000e16(c) (requiring a personnel-based civil action by an employee of an executive agency to name "the head of the department, agency, or unit, [as] the defendant").

10.)

**Legal Standards**

Pro se pleadings are to be liberally construed. Hebbe v. Pliler, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (liberal construction appropriate even post–Iqbal). Prior to dismissal, the court is to tell the plaintiff of deficiencies in the complaint and provide an opportunity to cure—if it appears at all possible the defects can be corrected. See Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc). However, if amendment would be futile, no leave to amend need be given. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 339 (9th Cir. 1996).

   i.  **Rule[4] 12(b)(1) and Subject Matter Jurisdiction**

A federal district court generally has original jurisdiction over a civil action when: (1) a federal question is presented in an action "arising under the Constitution, laws, or treaties of the United States" or (2) there is complete diversity of citizenship and the amount in controversy exceeds $75,000. See 28 U.S.C. §§ 1331, 1332(a). Under the well-pleaded complaint rule, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987).

   ii.  **Rule 12(b)(6) and Stating A Claim On Which Relief Can Be Granted**

Rule 8(a) requires that a pleading be "(1) a short and plain statement of the grounds for the court's jurisdiction . . . ; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief." Each allegation must be simple, concise, and direct. Rule 8(d)(1); see Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) (overruled on other grounds) ("Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim.").

A claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Rule 12(b)(6). A complaint fails to state a claim if it either lacks a cognizable legal theory or sufficient facts to allege a cognizable legal theory. Mollett v. Netflix,

---

[4] Citation to the "Rule(s)" are to the Federal Rules of Civil Procedure, unless otherwise noted.

4

Inc., 795 F.3d 1062, 1065 (9th Cir. 2015). To avoid dismissal for failure to state a claim, a complaint must contain more than "naked assertions," "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Thus, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

When considering whether a complaint states a claim upon which relief can be granted, the court must accept the well-pleaded factual allegations as true, Erickson v. Pardus, 551 U.S. 89, 94 (2007), and construe the complaint in the light most favorable to the plaintiff, see Papasan v. Allain, 478 U.S. 265, 283 (1986). The court is not, however, required to accept as true "conclusory [factual] allegations that are contradicted by documents referred to in the complaint," or "legal conclusions merely because they are cast in the form of factual allegations." Paulsen v. CNF Inc., 559 F.3d 1061, 1071 (9th Cir. 2009).

**Analysis**

**A. Plaintiff's Procedural Claim**

A good portion of plaintiff's complaint appears directed at the alleged unfairness of his suspension, particularly concerning the alleged failure of the IO (and related personnel) to give plaintiff the documentation used to support the IO's findings and recommendations. The complaint details plaintiff's interactions with his superiors in February and March of 2018, asserting to them he had not received the documents as required by 5 U.S.C. § 7503 and 5 C.F.R. § 752.203. (See ECF No. 1 at 7-8.) Defendant contends any such claim does not invoke the court's subject matter jurisdiction due to the limited scope granted by Congress under the CSRA. (ECF No. 5 at 5-6.) Plaintiff appears to argue such a claim is allowed as a procedural due process claim under the Fourteenth Amendment, as under the Administrative Procedures Act, or generally under the CSRA, because he was subjected to an "ultimate employment decision": his 14 day

suspension and (as argued at the hearing) job transfers. (ECF No. 6 at 3-5.)

To the extent plaintiff attempts to raise a due process claim under the U.S. Constitution, such claims are typically raised under 42 U.S.C. § 1983. However, section 1983 provides no right of action against federal (rather than state) officials. See Gibson v. United States, 781 F.2d 1334, 1343 (9th Cir. 1986) ("Federal officers acting under federal authority are immune from suit under section 1983."). Further, and more importantly, notwithstanding the limitations placed on cases brought under new Bivens contexts, the CSRA preempts Bivens actions and other suits for constitutional violations arising from governmental personnel actions. See Brock v. United States, 64 F.3d 1421, 1425 (9th Cir.1995) ("The CSRA is the exclusive remedy for all prohibited personnel actions."); Saul v. United States, 928 F.2d 829, 839–40 (9th Cir. 1991) ("CSRA preclusion of Bivens claims applies even absent any CSRA remedy."). The same holds true for the CSRA's preemption of certain classes of claims under the APA. Veit v. Heckler, 746 F.2d 508, 510 (9th Cir. 1984) (finding that because the "CSRA provides a comprehensive scheme for administrative and judicial review of federal personnel actions and practices," similar claims under the Administrative Procedures Act were precluded).

As to whether a procedural-defect claim regarding plaintiff's suspension is cognizable under the CSRA itself, the parties recognize plaintiff's claim here arises under 5 U.S.C. § 7503 and its regulatory counterpart, 5 C.F.R. § 2302. Given the scope of judicial review as defined by Congress, the CSRA does not provide plaintiff with a claim for procedural defects related to his suspension in the proceedings between him and his employer. As noted in Graham v Ashcroft:

> Chapter 75 of the CSRA governs adverse personnel actions based on misconduct: Subchapter I, 5 U.S.C. §§ 7501–7504, governs minor adverse personnel actions and Subchapter II, 5 U.S.C. §§ 7511–7514, governs major adverse personnel actions. Subchapter I defines a minor personnel action as suspension for 14 days or less, § 7502, and applies only to employees in the "competitive service," § 7501. Although Section 7503 provides some procedural protections in such cases, **there is no right to judicial review for covered employees under Subchapter I.**

358 F.3d 931, 933 (D.C. Cir. 2004) (emphasis added). The undersigned finds the rationale of Graham persuasive, as have other courts in this circuit. See, e.g., Chiang v. Gonzales, 2006 WL 8449284, at *7 (C.D. Cal. May 9, 2006) (noting that where a plaintiff's claims concerning minor

personnel actions by her employer, a federal agency, to be excluded from judicial review by the plain text of the CSRA), aff'd sub nom. Chiang v. F.B.I., 278 F. App'x 728 (9th Cir. 2008). Thus, the court has no power to hear plaintiff's procedural-defect claim related to his suspension.

### B. Plaintiff's Discrimination Claims

Despite the jurisdictional bar above, the court and parties agree the CSRA does not bar, and in fact authorizes, actions in federal court concerning discrimination. Title 5 U.S.C. § 2302(d) states:

> This section shall not be construed to extinguish or lessen any effort to achieve equal employment opportunity through affirmative action or any right or remedy available to any employee or applicant for employment in the civil service under (1) . . . 42 U.S.C. § 2000e-16, prohibiting discrimination on the basis of race, color, religion, sex, or national origin; (2) . . . the Age Discrimination in Employment Act . . .; [or] (4) . . . the Rehabilitation Act [for disability discrimination].

Thus, the court turns to whether the allegations in the complaint meet the standards set forth for each of the discrimination-styled claims asserted by plaintiff.

Plaintiff utilizes the form "Employment Discrimination" complaint and checks boxes for Title VII, the Age Discrimination in Employment Act ("ADEA"), and the Americans with Disabilities Act ("ADA"). (ECF No. 1 at 3.) Plaintiff checks boxes asserting failure to accommodate his disability, unequal terms and conditions of employment, and retaliation, and asserts these acts were taken based on his race (Native Indian Hispanic), color (brown), gender (male), national origin (Hispanic), age (born 1962), and disability ("Record of Permanent Medical Condition"). (Id. at 4.)

**(1) Disparate Treatment (race, color, national origin, sex, and age)**

Claims that an employee has been treated differently based on a protected class can arise under, as plaintiff notes, Title VII for race, color, national origin and sex discrimination, and the ADEA for age discrimination. For these kinds of claims, courts often look to the burden shifting test set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), to determine whether a complaint sets forth plausible discrimination claims as is required by Rule 12(b)(6). See Twombly, 550 U.S. at 555-57 (noting that to avoid dismissal for failure to state a claim, a

1   complaint must contain more than "naked assertions," "labels and conclusions," or "a formulaic

2   recitation of the elements of a cause of action"); Iqbal, 556 U.S. at 678 (holding that "[t]hreadbare

3   recitals of the elements of a cause of action, supported by mere conclusory statements do not

4   suffice"); see also, e.g., Fresquez v. Cnty. of Stanislaus, 2014 WL 1922560, at *2 (E.D. Cal. May

5   14, 2014 AWI-SAB) ("[W]hile a plaintiff need not plead facts constitut[ing] all elements of a

6   prima facie employment discrimination case in order to survive a motion to dismiss, courts look

7   to those elements to analyze a motion to dismiss—so as to decide, in light of judicial experience

8   and common sense, whether the challenged complaint contains sufficient factual matter, accepted

9   as true, to state a claim to relief that is plausible on its face.").

10   Under the burden shifting test of McDonnell Douglas, plaintiff must first make out a

11   prima facie case; the burden then shifts to defendant to provide a legitimate, non-discriminatory

12   reason for its actions, and the plaintiff is then allowed to argue the employer's rationale is mere

13   pretext for discrimination.  Reynaga v. Roseburg Forest Prod., 847 F.3d 678, 691 (9th Cir. 2017).

14   A prima facie case of discrimination under Title VII can be made when the complaint states facts

15   indicating the plaintiff:  (1) belongs to a protected class, (2) was performing according to his

16   employer's legitimate expectations, (3) suffered an adverse employment action, and (4) similarly

17   situated employees were treated more favorably, or other circumstances surrounding the adverse

18   employment action give rise to an inference of discrimination.  Id. at 690–91; see also Sheppard

19   v. David Evans & Assoc., 694 F.3d 1045, 1049 (9th Cir. 2012) (noting similar standards for a

20   prima facie case under the ADEA, including that the plaintiff was "discharged under

21   circumstances otherwise giving rise to an inference of age discrimination.").

22   Here, the complaint sufficiently asserts plaintiff is a member of a protected class as a

23   Hispanic (Native Indian) brown-skinned male born in 1962.  (ECF No. 1 at 4.)  Plaintiff also

24   sufficiently alleges he suffered an adverse employment action, given his suspension and transfer

25   to another department.  (Id.)  Finally, the court can infer plaintiff alleges he was performing his

26   job in a satisfactory manner based on the documents attached to the complaint.  (See ECF No. 1

27   at 22 ("I . . . never have and any work place violence in my 16 years on the job."); 26 (the deputy

28   chief's report noting plaintiff's last performance rating was fully successful and that plaintiff had

no previous formal disciplinary actions on record in the last 5 years).)

However, the complaint fails to provide any facts where the court can draw an inference that plaintiff's race, skin-color, national origin, sex, or age was in any way related to the suspension or transfer. Only twice does plaintiff's complaint discuss the genders of the parties involved, and that is only to note the fact of their genders—not that plaintiff's or his co-worker's gender had anything to do with plaintiff's suspension and transfer. (See plaintiff's assertions to the EEOC at ECF No. 1 at 14 (". . . in the AJ intent notice . . . [my employer indicated I] was being investigated for physically assault[ing] a female co-work [sic] and assault[ed] a female worker . . . ."); 15 ("The complainant reply to the agency's proposed notice denied any form of assault against female co-worker (Newton) or pushing/bumping into her in any way.") In fact, the majority of the file appended to plaintiff's complaint focuses on the alleged failure of his employer and the agency to provide him with documents related to his grievance process, as well as his argument put to the EEOC OFO concerning their definition of the term "assault" (as plaintiff argued he was suspended for "Conduct Unbecoming a Federal Employee and was never charged with assault). Further, upon review of the witness statements made by plaintiff, Newton, and others concerning the December 7th incident, none of the witnesses—plaintiff included—indicated there was any issue with plaintiff because of his protected characteristics. (See ECF No. 5-3 at 14.) Simply, nothing in the complaint, investigative documents, or EEOC documents gives the court any ability to draw an inference of discrimination or that plaintiff was treated differently because of his characteristics. Thus, plaintiff's disparate treatment claims based on his race, color, national origin, sex and age are insufficiently pleaded and subject to dismissal. Iqbal, 556 U.S. at 678; see also, e.g., Fresquez, 2014 WL 1922560.

The standards for granting leave to amend are liberal, especially given plaintiff proceeds without attorney representation. Lopez, 203 F.3d at 1130-31. To this end, the court considered the statements made in plaintiff's opposition brief, but as the brief focuses mainly on the general argument that discrimination claims are cognizable in federal court, the brief does not help plaintiff. His argument that Rule 8 only requires a short and plain statement of his claim misses that the law requires facts to be asserted in the complaint in order to back up the claims.

Plaintiff's brief states that the documents submitted to the EEOC and attached to the complaint should contain the facts necessary for the court to find a plausible claim exists, but as noted in the prior paragraph, the documents before the court contain no such factual assertions.  (See ECF No. 6.)

So as to make sure plaintiff was not being treated with short shrift, the court asked at the hearing about plaintiff's factual basis for believing his protected characteristics motivated his employer's acts, such that an inference of discrimination could be drawn.  Plaintiff stated he was mainly concerned about his gender discrimination claim, given that Ms. Newton is female, he is male, and he was suspended and transferred to another position after the December 17th incident.  Plaintiff noted Ms. Newton was given his job before the IO's investigation was complete, but also told the court she was given that position because she was given a disability accommodation.  Plaintiff stated he simply believed gender motivated his employer's choice to leave Ms. Newton in this job and transfer plaintiff to another department, circularly referencing his and Ms. Newton's gender.  Unfortunately, the court cannot consider such labels and conclusory assertions when considering whether plaintiff could present a plausible claim for gender discrimination.  See Twombly, 550 U.S. at 555-57 (noting that to avoid dismissal for failure to state a claim, a complaint must contain more than "naked assertions," "labels and conclusions," or "a formulaic recitation of the elements of a cause of action"); Iqbal, 556 U.S. at 678 (holding that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice").  Thus, it appears that to give plaintiff leave to amend on any gender discrimination claim would be futile.  Cahill, 80 F.3d at 339.

As to the race, color, national origin, and age discrimination claims, plaintiff told the court at the hearing he had no further facts to assert regarding these claims, simply noting his conclusion that his protected characteristics must have played a role in the termination and suspension because "it had to be", i.e. he could not think of any other reason for his employer's actions (despite the facts uncovered by the IO's investigation regarding the incident on December 7, 2017).  These kinds of conclusory assertions do not meet the heightened pleading standards required by Twombly and Iqbal, and so leave to amend on any race, color, national origin, or age

discrimination claim also appears futile.  Cahill, 80 F.3d at 339.

**Failure to Accommodate a Disability**

Claims that an employee has been treated differently based on a protected class generally arise from the ADA for disability discrimination, as asserted by plaintiff.  However, because plaintiff was a federal employee during the relevant period, any disability discrimination claim would arise under the Rehabilitation Act, not the ADA.  See Fleming v. Yuma Reg'l Med. Ctr., 587 F.3d 938, 939 (9th Cir. 2009) ("[The Rehabilitation Act, Section] 504 incorporates the standards of Title I of the ADA for proving when discrimination in the workplace is actionable."); see also, e.g., Jackson v. Napolitano, 2010 WL 94110, at *3 (D. Ariz. Jan. 5, 2010) (noting "[i]t is well-settled that the federal government is excluded from the ADA's definition of "employer" and citing cases holding federal-employee plaintiffs instead should "concentrate on the Rehabilitation Act[.]").  Despite this, the Rehabilitation Act incorporates the ADA's "standards of substantive liability."  Walton v. U.S. Marshals Serv., 492 F.3d 998, 1005 (9th Cir. 2007).

Here, it is unclear from the papers what plaintiff's disability is alleged to have been, as plaintiff simply checks the "disability discrimination" box and states he has a "record of permanent medical condition."  No facts about his alleged disability or his employer's failure to accommodate are included in the complaint.  Thus, this claim is subject to dismissal for failure to state facts giving rise to a plausible claim.  Iqbal, 556 U.S. at 678.

As with the Title VII disparate treatment claims, plaintiff's brief contains no additional information about the basis for a disability discrimination claim.  (See ECF No. 6.)  Further, at the hearing, plaintiff disclaimed having any other facts to assert connecting his disability to his employer's actions.  Plaintiff did state his employer was on notice about an issue with his lumbar, stating he was hurt on the job and filed a worker's compensation claim; however, he also told the court his paperwork was rejected and accommodation request was denied.  Beyond this assertion, plaintiff had no other facts about a disability discrimination claim, simply falling back on his conclusion that his employer must have suspended/transferred him due to his disability because he could not think of any other reason why those adverse actions occurred.  These kinds of conclusory assertions do not meet the heightened pleading standards required by Twombly and

Iqbal, and so leave to amend on any disability discrimination claim appears futile. Cahill, 80 F.3d at 339.

### (2) Retaliation

At the pleadings stage, courts look to the facts asserted in the complaint to determine whether the plaintiff has a plausible claim for retaliation based on the relevant legal standards. See E.E.O.C. v. Farmers Ins. Co., 24 F. Supp. 3d 956, 961 (E.D. Cal. 2014). To establish a prima facie case of retaliation, the plaintiff must show he undertook a protected activity, his employer subjected him to an adverse employment action, and there is a causal link between those two events. Vasquez v. Cty. of Los Angeles, 349 F.3d 634, 646 (9th Cir. 2003). Critically, the causation standard for retaliation claims is much more stringent than are claims for discrimination. See Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 360 (2013) (requiring "but-for" causation, not just that the employer's action was a "motivating factor").

Here, the only facts plaintiff states in the complaint concerning alleged retaliation appear is in his March 2017 reply to the IO. Therein, plaintiff briefly recounts that in April 2016 he requested a change of supervisor after his then-supervisor Mel Sparks had refused to move the time of a mediation and had written plaintiff up three times; these events resulted in plaintiff filing an EEO complaint against Sparks. (ECF No. 1 at 22.) The EEOC noted the branch chief had cancelled plaintiff's participation in a wellness program while co-workers on light duty were allowed to participate, finding plaintiff didn't qualify for the program, and also noted plaintiff was written up concerning leave usage, finding plaintiff failed to follow procedures. (Id. at 30.) The EEOC decision also notes plaintiff failed to make out a prima facie case of discrimination on any of his claims (including regarding the incident with Newton), given the lack of connection between his characteristics and defendant's acts. (Id. at 31.) Aside from that fact, the only mention of any alleged protected activity was in plaintiff's statement to the police officer, wherein he simply wrote that he had filed an EEO complaint about an unnamed incident. (ECF No. 5-3.)

These facts asserted in the complaint are not enough for the court to be able to infer defendant suspended or transferred plaintiff because of any protected action plaintiff may have

12

taken.  First, there is a significant amount of time that passed between many of these prior actions and the time plaintiff was suspended.  See E.E.O.C. v. Harris Farms, Inc., 2005 WL 3039204, at *18 (E.D. Cal. Sept. 30, 2005) ("Proximity of time between protected conduct and an adverse employment action may support an inference of causation, but the timing may not exceed three months."); see also, e.g., Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001) (noting cases where three- and four-month gaps were insufficient); Manatt v. Bank of Am., NA, 339 F.3d 792, 802 (9th Cir. 2003) (same, for nine months).  Even with the EEO complaint allegedly filed against Sparks in the weeks prior to the December 17th incident, plaintiff fails to allege any relation between this filing and his suspension or transfer, including concerning management's knowledge of these acts.  See, e.g., Cooper v. Cate, 2011 WL 5554321, at *11 (E.D. Cal. Nov. 15, 2011) (dismissing the plaintiff's retaliation claim because there were "insufficient allegations that those who engaged in the adverse employment actions had knowledge of [the plaintiff's] protected conduct").  Thus, plaintiff's retaliation claim is dismissible for failure to state a claim.

As with the discrimination claims, the court provided plaintiff with a chance to further draw out facts concerning defendant's alleged retaliation at the hearing.  Plaintiff stated he was reassigned three times after the December 17th incident, and concluded these transfers were based on retaliation.  However, as with the discrimination claim, plaintiff could point to no facts, other than his own belief, that his employer suspended or transferred him because of any alleged protected activity.  Given the more-stringent causation requirements, Nassar, 570 U.S. at 362–63, and the ample evidence in the record that defendant undertook its actions based on the facts gathered by the IO regarding the December 17th incident, it appears that giving leave to amend on any retaliation claim would be futile.  Cahill, 80 F.3d at 339.

**(3) Hostile Work Environment**

At the pleadings stage, courts look to the facts asserted in the complaint to determine whether the plaintiff has a plausible claim that he was subjected to a hostile work environment.  See, e.g., Scott v. ManTech Int'l Corp., 2019 WL 1461901, at *3 (D. Haw. Apr. 2, 2019).  To succeed on a hostile work environment claim based on a protected characteristic, the plaintiff must demonstrate:  "(1) that he was subjected to verbal or physical conduct [related to the

protected characteristic]; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." Vasquez, 349 F.3d at 642.  Regarding a work environment that is sufficiently hostile, the court examines the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Faragher v. City of Boca Raton, 524 U.S. 775, 787–88 (1998).  Simple teasing, offhand comments, and isolated incidents (unless extremely serious) are not sufficient to create an actionable claim.  Id. at 788.

Here, the complaint alleges only a couple instances where plaintiff and his co-workers or supervisors were in conflict, and none of those appear in any way related to any of his alleged protected characteristics.  Thus, under prevailing law, plaintiff's complaint fails to state a hostile work environment claim.  Faragher, 524 U.S. at 788.  Further, plaintiff did not provide any additional details at the hearing about any other incidents at his work, or the severity of any alleged encounters, such that it could be inferred he was subjected to an environment that meets the high bar for a hostile work environment claim.  Thus, giving leave to amend on this claim appears futile.  Cahill, 80 F.3d at 339.

**RECOMMENDATIONS**

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendant's motion to dismiss (ECF No. 5) be GRANTED;
2. The action be DISMISSED WITH PREJUDICE;
3. The Clerk of Court be directed to CLOSE this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, either party may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  A reply may be filed 14 days thereafter.  Failure to file objections

////

////

within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).

Dated:  January 24, 2023

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

more.1719

15